United States District Court
Southern District of Texas

**ENTERED**

June 30, 2021

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| **COMMODITY FUTURES TRADING COMMISSION,**<br><br>Plaintiff,<br><br>v.<br><br>**LAINO GROUP LIMITED D/B/A PAXFOREX**<br><br>Defendant. | **ORDER OF FINAL JUDGMENT BY DEFAULT, PERMANENT INJUNCTION, AND CIVIL MONETARY PENALTY**<br><br>**Case No. 4:20-cv-03317** |

## I.   INTRODUCTION AND PROCEDURAL HISTORY

On September 24, 2020, the Commission (or "CFTC") filed its Complaint in this matter (Docket Entry ("DE") 1) charging Defendant Laino Group Limited d/b/a PaxForex ("PaxForex") with violating Sections 6(a) and 6d(a)(1), 7 U.S.C. §§ 6(a), 6d(a)(1) (2018), of the Commodity Exchange Act ("Act" or "CEA") for engaging in unlawful retail commodity transactions, and failing to register with the Commission as a futures commission merchant ("FCM").  On September 28, 2020, Defendant's domain name, www.paxforex.com, was seized by the Department of Justice ("DOJ") through a seizure warrant issued in this District.

On February 15, 2021, Defendant was served with the Summons and Complaint (DE 16).  Defendant's response was due March 8, 2021.  After

Defendant failed to plead or otherwise defend Plaintiff filed a request for Clerk's entry of Default on March 12, 2021 (DE 17), which has subsequently been entered.  Defendant has failed to appear or answer the Complaint within the time permitted by Fed. R. Civ. P. 12(a)(1).

The Commission has now moved this Court to grant final judgment by default against Defendant, order permanent injunctive relief, and impose a civil monetary penalty.  The Court has carefully considered the Complaint, the allegations of which are well-pled and hereby taken as true, the Commission's memorandum in support of its motion, the record in this case, and the Court being otherwise advised in the premises, it is hereby: **ORDERED** that Plaintiff's Motion for Entry of Default Judgment against Defendant is **GRANTED** in all respects. Accordingly, the Court enters findings of fact, conclusions of law, and an Order of Final Judgment by Default, Permanent Injunction, and Civil Monetary Penalty pursuant to Section 6c of the Act, 7 U.S.C. § 13a-l (2018), as set forth herein.

## II.    FINDING OF FACT

### THE COURT FINDS

### A.  The Parties

1.      Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency charged by Congress with the administration and

enforcement of the Act, 7 U.S.C. §§ 1- 26 (2018), and the Commission's

Regulations ("Regulations") promulgated thereunder, 17 C.F.R. pts. 1-190 (2020).

2.       Defendant Laino Group Limited d/b/a PaxForex is registered as an

international business company in Saint Vincent and the Grenadines and claims on

its website that its information technology infrastructure has been deployed to

data centers in New York and London.  PaxForex operates an online trading

platform previously accessed through www.paxforex.com, and now

www.paxforex.org, which offers customers foreign currency exchange ("forex")

and retail commodity transactions, among other products.  PaxForex has never

been registered with the Commission in any capacity.

## B. Defendant's Conduct

### Defendant Engaged in Retail Forex and Unlawful Retail Commodity Transactions Without CFTC Registration

3.       From at least March 2018 through the present ("Relevant Period"),

Defendant operated an online trading platform ("platform") accessed through its

website, www.paxforex.com and later www.paxforex.org ("website").  Through its

platform and website Defendant solicits or accepts orders from customers,

including those in the United States, for transactions in "Contracts for Difference"

("CFDs") referenced to the prices of commodities including certain foreign

currencies such as the Euro and Australian Dollar, precious metals including gold

and silver, and digital assets including bitcoin, ether, and litecoin.  Defendant also

solicited customers through its PaxForex YouTube channel at www.youtube.com.

4.      A CFD is generally an agreement to exchange the difference in value

of an underlying asset, such as a commodity, between the time at which the CFD

trading position ("position") is established and the time at which it is terminated.

5.      CFD trading on the platform is settled in U.S. Dollars ("USD") and

bitcoin, among other assets.

6.      Bitcoin, ether, and litecoin are digital representations of value that

function as mediums of exchange, units of account, and/or stores of value, but that

do not have legal tender status in any jurisdiction.  Bitcoin and other virtual

currencies are distinct from "real" currencies, which are the coin and paper money

of the United States or another country that are designated as legal tender,

circulate, and are customarily used and accepted as a medium of exchange in the

country of issuance.

7.      To begin trading or open a position on Defendant's platform,

customers complete a brief registration process through PaxForex's website.

During the registration process, customers provide, among other information, their

country, a physical address, email address, and phone number to which PaxForex

sends email and text messages, respectively, for verification.

8.      For entering personal information, Defendant provides customers with

a drop down menu with an option of selecting the United States as the customer's country of residence as well as an American flag symbol that corresponds to the customer's area code and phone number.

9.      After completing the registration process, U.S. customers deposit assets such as USD and bitcoin into an account or wallet controlled by PaxForex as margin or collateral for the customers' trades.

10.     When a customer deposits bitcoin as collateral, Defendant credits the customer's trading account in USD in an amount that is purportedly equivalent to the market value of the bitcoin.

11.     Trades on Defendant's platform are made using MetaTrader ("MT") trading platform software, which U.S. customers can download from Defendant's website onto their desktop or mobile devices.  For trading foreign currencies, MT presents customers with currency pairs such as the Euro/USD (EUR/USD) and Australian Dollar/USD (AUD/USD) in which the first currency is the currency being "bought" or "sold," and the second currency is the currency in which the buy or sell price is quoted.

12.     Similarly, for trading digital assets, the platform's MT presents customers with pairs including ether/USD (ETH/USD), litecoin/USD (LTC/USD), and bitcoin/USD (BTC/USD).  As is the case with trading foreign currencies on

Defendant's platform, the first asset is the asset being "bought" or "sold" with the price quoted in the second asset, USD.

13.    Using MT on Defendant's platform, U.S. customers can either buy or sell CFDs (go "long" or "short") referenced to the prices of foreign currencies, precious metals, and digital assets on margin with leverages potentially as high as 1/500.

14.    In this case, "margin" means the assets a customer deposits with the Defendant as collateral, while "leverage" allows a customer to control a large amount of a commodity with a comparatively small amount of margin.  Leverage also allows customers to significantly magnify profits or losses with a relatively small investment.

15.    In taking trading positions on Defendant's platform, U.S. customers speculate on the price movement of the underlying commodity and either profit or lose based on whether prices move in their favor or not.  There is no actual delivery of the underlying commodity and customers close their positions by trading equal and opposite positions.  Defendant automatically closes customers' positions when their losses reduce the value of assets they have deposited to equal to or less than five percent of the value of their open positions.

16.    When one of Defendant's agents was contacted by an individual who identified himself as a U.S. customer, Defendant's agent actively solicited that

6

individual in this District by email, and by phone through a U.S. phone number, to transact in CFDs referenced to the prices of foreign currencies, precious metals, and digital assets on Defendant's platform.

17.     Defendant subsequently accepted orders placed by this U.S. individual on its platform, from this District, and executed transactions, on a leveraged or margined basis using bitcoin as collateral margin, in CFDs referencing the price of commodities.  In these CFD transactions, Defendant acted as the counterparty.

18.     Defendant used its YouTube channel as a further means of soliciting U.S. customers.  It did this through a promotional video that instructs customers on how to open a trading account and by providing an "Open Trading Account" hyperlink to PaxForex's website.

19.     PaxForex's YouTube channel, along with PaxForex's website, also contained daily videos and analyses, narrated by one of Defendant's agents, which promote Defendant's forecasts and recommendations for making trades in specific commodities, and periodic videos and analyses that tout the purported profitability of Defendant's earlier trading recommendations and associated forecasts.

20.     Additionally, in a blogpost on its website, Defendant touts itself as "The Best Forex Broker for Beginners in the USA."

21.     Similarly, Defendant's website contained customer testimonials from two U.S. customers, one of whom the website identified as being from the United

States, and further purports to have a U.S. presence with its "IT Infrastructures

[which] has been deployed within industry leading datacenters in London . . . and

New York."

22.     Finally, Defendant solicits customers, including those in the United

States, through its "Affiliate" program.  Through this program, Defendant

incentivizes U.S. persons to become "affiliates" by providing them with

commissions and other incentives to solicit customers to trade CFDs in forex and

other commodities on Defendant's platform.

23.     Defendant fails to check the eligible contract participant ("ECP")[1]

status of its customers during the customer registration process.  Moreover,

Defendant solicits customers to open an account with an initial deposit of as little

as the equivalent of $10 to incentivize trading by retail customers who would not

qualify as ECPs.

24.     Through the above-described conduct, Defendant offers to enter into,

or enters into, and/or executes leveraged, margined or financed transactions in

foreign currencies, precious metals, and digital assets with non-ECP customers in

the United States.

---

[1]  ECP is defined in in relevant part, as an individual: (a) who has amounts invested on a discretionary basis, the aggregate of which exceeds $10 million, or (b) $5 million if the individual enters into the transaction to "manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual."  7 U.S.C. § 1a(18)(A)(xi) (2018).

25.     Defendant's platform is not a designated contract market or derivatives transaction execution facility, exempt board of trade, or a bona fide foreign board of trade as those terms are defined in the Act.  Indeed, in the "Terms and Conditions of business PaxForex MT4," which Defendant provided to customers, Defendant acknowledges that its platform is "the sole Execution Venue [for customers' orders and trades] which is a nonregulated market."

26.     During the Relevant Period, PaxForex has not been registered with the Commission as an FCM.

27.     After the Commission's Complaint was filed on September 24, 2020, and Defendant's domain name, www.paxforex.com, was seized on September 28th by DOJ, Defendant appears to have restored access to its trading platform through www.paxforex.org, sometime in October 2020.

## III.   CONCLUSIONS OF LAW

### A. Jurisdiction and Venue

28.     This Court has jurisdiction over this action under 28 U.S.C. § 1331 (2018) (federal question jurisdiction) and 28 U.S.C. § 1345 (2018) (jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  Further, 7 U.S.C. § 13a-1 (2018) provides that district courts have jurisdiction to hear actions brought by the Commission for injunctive relief and to enforce compliance with the Act whenever it shall appear to

9

the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

29.     The Commission has jurisdiction over the conduct and transactions at issue here pursuant to 7 U.S.C. §§ 2(c)(2)(C), 2(c)(2)(D) (2018) as further discussed below.

30.     Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e) (2018), because at least some of the acts and practices in violation of the Act occurred within this District.

## B.  The Commodity Exchange Act

31.     In analyzing the Commission's motion, the Court recognizes that "The intent of the congressional design [of the Act] is clear; persons engaged in the defined regulated activities within the commodities business are not to operate as such unless registered . . . Registration is the kingpin in this statutory machinery, giving the Commission the information about participants in commodity trading which it so vitally requires to carry out its other statutory functions of monitoring and enforcing the Act." *CFTC v. British Am. Commodity Options*, 560 F.2d 135, 139-40 (2nd Cir. 1977); *CFTC v. Savage*, 611 F.2d 270, 280 (9th Cir. 1979) (same); *see also CFTC v. Southern Tr. Metals, Inc.*, 894 F.3d 1313, 1324 (11th Cir. 2018) ("The CEA imposes registration requirements on commodities traders and

the exchanges where they trade . . . Together, these provisions [7 U.S.C. § 6d(a)(1)

and 7 U.S.C. § 6(a)] require that only registered traders handle transactions and

that they do so on a registered exchange.").

### C. Defendant's Failure to Properly Answer or Defend Warrants Entry of a Default Judgment

32.     Fed. R. Civ. P. 55 authorizes a default judgment when "a party against

whom a judgment for affirmative relief is sought has failed to plead or otherwise

defend . . . ." Fed. R. Civ. P. 55(a); *see New York Life Ins. Co. v. Brown*, 84 F.3d

137, 141 (5th Cir. 1996) ("A *default* occurs when a defendant has failed to plead or

otherwise respond to the complaint within the time required by the Federal Rules.")

(emphasis in original).

33.     A default judgment, issued by a court pursuant to Fed. R. Civ. P.

55(b)(2), while disfavored, is within the Court's sound discretion. *See Mason v.*

*Lister*, 562 F.2d 343, 345 (5th Cir. 1977)).

34.     However, there must be greater reason to grant the default judgment

than the defendant's failure "to meet a procedural time requirement." *Lacy v. Sitel*

*Corp.*, 227 F.3d 290, 292 (5th Cir. 2000) (citation omitted).  Instead, "There must

be a sufficient basis in the pleadings for the judgment entered" while "The

defendant, by his default, admits the plaintiff's well-pleaded allegations of fact,"

and so these allegations are taken as true at default judgment. *Nishimatsu Constr.*

*Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

35.     Courts consider six factors to determine whether a default judgement is appropriate: (1) material issues of fact; (2) existence of substantial prejudice; (3) clarity of the grounds for default; (4) default caused by good faith mistake or excusable neglect; (5) harshness; and (6) "whether the court would think itself obliged to set aside the default on the defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (citation omitted).

36.     Consideration of these factors warrants default judgment here.   Because Defendant has failed to respond to the Complaint, its well-pled factual allegations are taken as true. *See Nishimatsu Const. Co., Ltd.*, 515 F.2d at 1206.  Consequently, there are no material issues of fact.   *See China Int'l Marine Containers (Group) Ltd. v. Jiangxi Oxygen Plant Co., Ltd.*, No. 4:15-CV-01887, 2017 WL 6403886, at *3 (S.D. Tex. Feb. 15, 2017).

37.     Defendant was properly served, and has chosen not to respond before this Court, but rather appears to have moved its unlawful activity to a different domain name.  Thus, a default judgment against it is neither substantially prejudicial nor harsh.   *See id.*   Conversely, delaying judgment would prejudice the public interest generally by frustrating the Commission's mission of enforcing registration-related provisions in the Act that protect market integrity and customers. *See British Am. Commodity Options*, 560 F.2d at 139-40; *Savage*, 611 F.2d at 280; *Southern*

*Tr. Metals, Inc.*, 894 F.3d at 1324.

38.    Grounds for default are clearly established in that Defendant was properly served and has not answered the Complaint, and the Clerk has properly entered default against it.  *See China Int'l Marine Containers (Group) Ltd.*, 2017 WL 6403886, at *3.

39.    As further shown below, Plaintiff's well-pled claims, taken as true, establish that Defendant engaged in foreign currency and unlawful retail commodity transactions, without registration and thus violated CEA provisions.

## D. Defendant Offered to Enter Into or Entered Into Retail Forex Transactions With U.S. Customers Under 7 U.S.C. § 2(c)(2)(C)

40.    Retail forex transactions are subject to the Commission's jurisdiction pursuant to 7 U.S.C. § 2(c)(2)(C)(i)(I), which in relevant part applies to "any agreement, contract, or transaction in foreign currency" that is offered to, or entered into with, a person that is not an ECP—i.e., a person who is a retail customer—"on a leveraged or margined basis, or financed by the offeror, the counterparty, or a person acting in concert with the offeror or counterparty on a similar basis."  *See, e.g.*, *CFTC v. GID Grp., Inc.*, No. 3:11–cv–03068, 2013 WL 709308, at *6 (N.D. Tex. Feb. 4, 2013); *CFTC v. Ramirez*, No. 4:19-cv-140, 2019 WL 4198857 (S.D. Tex. July 17, 2019).  Here, Defendant offered to, or entered with non-ECP U.S. customers, transactions in foreign currency pairs such as the

Euro/USD (EUR/USD) and Australian Dollar/USD (AUD/USD) with leverages potentially as high as 1/500 and thus engaged in retail forex transactions.

### E. Defendant Offered to Enter Into or Entered Into Retail Commodity Transactions With U.S. Customers Under 7 U.S.C. § 2(c)(2)(D)

41.     Pursuant to 7 U.S.C. § 2(c)(2)(D)(i), retail commodity transactions are defined as "any agreement, contract, or transaction in any commodity" that is entered into with, or offered to (even if not entered into with), a non-ECP "on a leveraged or margined basis, or financed by the offeror, the counterparty, or a person acting in concert with the offeror or counterparty on a similar basis."

42.     In addition to forex, Defendant offered CFDs referenced to the prices of gold, silver, bitcoin, ether, and litecoin to non-ECP U.S. customers on a leveraged basis.  Gold and silver are "commodities" pursuant to Section 1a(9) of the Act, 7 U.S.C § 1a(9) (2018).  *See CFTC v. Int'l Monetary Metals, Inc.*, No. 14-62244-CIV, 2016 WL 8256852, at *4 (S.D. Fla. Aug. 1, 2016) ("The precious metals, including gold and silver, described herein are commodities as defined by Section 1a(9) of the CEA, 7 U.S.C. § 1a(9)."); *CFTC v. Smithers*, No. 9:12- CV-81165-KAM, 2013 WL 4851684, at *7 (S.D. Fla. July 31, 2013) (same).

43.     Similarly, bitcoin, ether, and litecoin are "commodities" pursuant to 7 U.S.C. § 1a(9).  *CFTC v. Reynolds*, No. 1-19-cv-05631, 2021 WL 796683, at *5 (S.D.N.Y. Mar. 2, 2021) (slip copy) ("Virtual currencies such as Bitcoin are

encompassed in the definition of 'commodity' under Section 1a(9) of the Act, 7 U.S.C. § 1a(9) (2018).") (citations omitted); *CFTC v. McDonnell*, 287 F. Supp. 3d 213, 228 (E.D.N.Y. 2018) ("Virtual currencies can be regulated by CFTC as a commodity.  They fall well-within the common definition of 'commodity' as well as the CEA's definition of 'commodities' as 'all other goods and articles . . . in which contracts for future delivery are presently or in the future dealt in.'"); *CFTC v. McDonnell*, 332 F. Supp. 3d 641, 650–51 (E.D.N.Y. 2018) (entering judgment against Defendant following bench trial); *CFTC v. My Big Coin Pay, Inc.*, 334 F. Supp. 3d 492, 495-98 (D. Mass. 2018) (denial of motion to dismiss; determining that a non-bitcoin virtual currency is a "commodity" under the Act).

44.     Accordingly, Defendant by offering to enter into, or entering into transactions in gold, silver, bitcoin, ether, and litecoin with non-ECP U.S. customers[2] on a leveraged or margined basis engaged in retail commodity transactions subject to 7 U.S.C. § 2(c)(2)(D)(i).

### F. Defendant Violated 7 U.S.C. § 6(a) by Offering to Enter Into or Entering Into Illegal Off-Exchange Retail Commodity Transactions

45.     Pursuant to 7 U.S.C. § 2(c)(2)(D)(iii), the retail transactions in gold, silver, ether, litecoin, and bitcoin at issue here are subject to 7 U.S.C. § 6(a) (2018) as if they are contracts of sale of a commodity for future delivery.  In relevant part,

---

[2] Nor were the U.S. customers eligible commercial entities as defined under 7 U.S.C. § 1a(17) (2018).

7 U.S.C. § 6(a) makes it unlawful for any person to offer to enter into, enter into, execute, confirm the execution of, or conduct any office or business anywhere in the United States for the purpose of soliciting, accepting any order for, or otherwise dealing in any transaction in, or in connection with, a contract for the purchase or sale of a commodity for future delivery unless the transaction is conducted on or subject to the rules of a board of trade which has been designated or registered by the Commission as a contract market or derivatives transaction execution facility for such commodities.

46.     Defendant's platform is not a designated contract market or derivatives transaction execution facility or bona fide foreign board of trade. Further in its "Terms and Condition of business PaxForex MT4" provided to customers, Defendant acknowledges that its platform is "the sole Execution Venue [for customers' trades] which is a nonregulated market."

47.     Accordingly, Defendant violated 7 U.S.C. § 6(a), by offering or entering into in the United States, including in this District, retail commodity transactions as defined under 7 U.S.C. § 2(c)(2)(D)(i) (2018). *See, e.g., CFTC v. 1pool Ltd.*, Case No. 1:18-CV-2243, 2019 WL 1605201, at *4-5 (D.D.C. Mar. 4, 2019) (consent order) (finding foreign defendants violated 7 U.S.C. §§ 6(a), 6d(a)(1)).

### G. Defendant Violated 7 U.S.C. § 6d(a)(1) by Failing to Register as an FCM

48.    7 U.S.C. § 6d(a)(1) (2018), provides that it shall be unlawful for any person to act as an FCM unless such person is registered with the CFTC as an FCM.  PaxForex acted as an FCM, as defined by 7 U.S.C. § 1a(28) (2018), by: (a) soliciting or accepting orders for retail forex transactions as described by 7 U.S.C. § 2(c)(2)(C)(i), and retail commodity transactions as described by 7 U.S.C. § 2(c)(2)(D)(i); or (b) acting as a counterparty for retail forex transactions as described by 7 U.S.C. § 2(c)(2)(C)(i) or retail commodity transactions as described by 7 U.S.C. § 2(c)(2)(D)(i); and, (c) in connection with these activities, accepting money, securities, or property (or extending credit in lieu thereof) to margin trades or contracts that result or may result therefrom.  While doing so, Defendant failed to register with the CFTC as an FCM, and thus violated 7 U.S.C. § 6d(a)(1).  *Id.*

### H.  Defendant is Liable For The Acts of Its Officers, Employees, And/Or Agents Pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. § 1.2

49.    The acts and omissions of PaxForex's officers, employees, and/or agents described in the Complaint were done within the scope of their office, employment, and/or agency with PaxForex.  Therefore, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2018), and Regulation 1.2, 17 C.F.R. § 1.2 (2020), PaxForex is liable as a principal for each act, omission, or failure of

17

its officers, employees, and/or agents acting for PaxForex, constituting violations of 7 U.S.C. § 6(a) and 7 U.S.C. § 6d(a)(1).

## IV.    ORDER FOR RELIEF

### A. PERMANENT INJUNCTION

50.    The Commission is authorized to seek, and the Court to impose, injunctive relief.  Section 6c of the Act, 7 U.S.C. § 13a-l(a) (2018).  Such relief may be sought against any person whenever it shall appear to the Commission that such person has engaged in any act or practice that violates the Act.

51.    As described above, the well-pled facts of the Commission's Complaint, and the evidence submitted, establish a reasonable likelihood that Defendant will be a repeat violator of the Act unless permanently restrained and enjoined by the Court.

52.    Based upon and in connection with the foregoing conduct, pursuant to 7 U.S.C. § 13a-l, Defendant is permanently restrained, enjoined and prohibited from directly or indirectly:

a. Engaging, directly or indirectly, in conduct in violation of Sections 6(a) and 6d(a)(1) of the Act, 7 U.S.C. §§ 6(a), 6d(a)(1) (2018);

b. Trading on or subject to the rules of any registered entity (as that term is defined in Section la(40) of the Act, 7 U.S.C. § la(40) (2018));

18

c.  Entering into any transactions involving "commodity interests" (as
    that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2020)), for its
    own account or for any account in which it has a direct or indirect
    interest;

d.  Having any commodity interests  traded on its behalf;

e.  Controlling or directing the trading for or on behalf of any other
    person or entity, whether by power of attorney or otherwise, in any
    account involving commodity;

f.  Soliciting, receiving or accepting any funds from any person for the
    purpose of purchasing or selling any commodity interests;

g.  Applying for registration or claiming exemption from registration
    with the Commission in any capacity, and engaging in any activity
    requiring such registration or exemption from registration with the
    Commission, except as provided for in Regulation 4.14(a)(9), 17
    C.F.R. § 4.14(a)(9) (2020); and/or

h.  Acting as a principal (as that term is defined in Regulation 3.l(a), 17
    C.F.R. § 3.1(a) (2020)), or agent of any person (as that term is defined
    in 7 U.S.C. § la(38) (2020)), registered, exempted from registration or
    required to be registered with the Commission except as provided for
    in 17 C.F.R. § 4.14(a)(9).

**B. CIVIL MONETARY PENALTY**

53.     Under Section 6c(d)(l) of the Act, 7 U.S.C. § 13a-l(d)(l), and Regulation 143.8, 17 C.F.R. § 143.8 (2020), the Commission is authorized to seek a civil monetary penalty equal to the higher of triple Defendant's monetary gain from each violation of the Act or up to $187,432 per violation.[3]

54.     Defendant: (i) offered or accepted orders from U.S. retail customers in commodities (precious metals and digital assets) constituting violations of 7 U.S.C. § 6(a); and (ii) acted as an FCM without being registered with the Commission in violation of 7 U.S.C. § 6d(a)(1).

55.     Defendant's violations involve core provisions of the Act, and the Defendant has made no attempt to cure its violations while continuing to engage in its unlawful conduct.  The Court finds that these circumstances warrant imposition of a significant monetary penalty.

56.     Based on Defendant's conduct, the Court finds that a civil monetary penalty reflecting the maximum permissible amount ($187,432) for each of its two violations is warranted in this circumstance.

57.     Accordingly, Defendant shall pay a civil monetary penalty in the

---

[3] This is the inflation-adjusted CMP for CEA violations occurring after Nov. 1, 2015.  *See* CFTC Annual Adjustment of Civil Monetary Penalties to Reflect Inflation – 2021, 86 Fed. Reg. 7802 (Feb. 2, 2021) (codified at 17 C.F.R. § 143.8).

amount of $374,864 (three hundred seventy-four thousand eight hundred sixty-four dollars) ("CMP Obligation").  If the CMP Obligation is not paid immediately, then post-judgment interest shall accrue on the CMP Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961 (2018).

58.     Defendant shall pay its CMP Obligation and any post-judgment interest by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> MMAC/ESC/AMK.326
> Commodity Futures Trading Commission
> Division of Enforcement
> 6500 S. MacArthur Blvd.
> HQ Room 181
> Oklahoma City, OK 73169
> (405) 954-6569 office
> (405) 954-1620 fax
> 9-AMC-AR-CFTC@faa.gov

If payment by electronic funds transfer is chosen, Defendant shall contact Marie Thorne or her successor at the address above to receive payment instructions and shall fully comply with those instructions.  Defendant shall accompany payment of the CMP Obligation with a cover letter that identifies Defendant and the name and docket number of this proceeding.  Defendant shall simultaneously transmit copies

of the cover letter and the form of payment to the Chief Financial Officer,
Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st
Street, N.W., Washington, D.C. 20581.

59.     Partial Satisfaction: Acceptance by the Commission of any partial
payment of Defendant's CMP Obligation shall not be deemed a waiver of its
obligation to make further payments pursuant to this Order, or a waiver of the
Commission's right to seek to compel payment of any remaining balance.

## V. MISCELLANEOUS PROVISIONS

60.     Injunctive and Equitable Relief Provisions: The injunctive and
equitable relief provisions of this Order shall be binding upon Defendant, upon any
person under the authority or control of Defendant, and upon any person who
receives actual notice of this Order, by personal service, e-mail, facsimile or
otherwise insofar as he or she is acting in active concert or participation with
Defendant.

61.     Notices: All notices required to be given by any provision of this
Order shall be sent certified mail, return receipt requested, as follows:

Notice to the Commission:

Harry E. Wedewer
Assistant Chief Counsel
Commodity Futures Trading Commission
Division of Enforcement
Three Lafayette Centre

1155 21st Street, N.W.
Washington, D.C. 20581

Notice to Defendant:

Laino Group Limited, d/b/a PaxForex
c/o Wilfred Services Ltd.
Suite 305, Griffith Corporate Centre
Beachmont Business Centre
P.O. Box 1510
Kingstown
St. Vincent and The Grenadines

62.     Change of Address/Phone: Until such time as Defendant satisfies in full its CMP Obligation as set forth in this Order, Defendant shall provide written notice to the Commission by certified mail of any change to its telephone number and/or mailing address within ten calendar days of the change.

63.     Invalidation: If any provision of this Order or if the application of any provision or circumstance is held invalid, then the remainder of this Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

64.     Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of this action to ensure compliance with this Order and for all other purposes related to this action, including any motion by Defendant to modify or to seek relief from the terms of this Order.

65.     There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this Order of Final Judgment by Default, Permanent Injunction, and Civil Monetary Penalty forthwith and without further notice.

SO ORDERED, this __**30**__ day of ~~June~~, 2021, at Houston, Texas.

David Hittner
United States District Judge

24